# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

PAUL LASSA,

Plaintiff,

v.

HOWARD MARTIN, STEPHEN MCCULLEN, TRAVIS BRADY, and ROBERT MILLER,

Defendant.

Case No. 26-CV-1023-JPS

**ORDER**

Plaintiff Paul Lassa ("Plaintiff"), an inmate incarcerated in Racine Correctional Institution ("RCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. ECF No. 1. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

## 1. MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On July 24, 2026, the Court ordered Plaintiff to pay an initial partial filing fee of $45.18. ECF No. 7. Plaintiff paid that fee on August 4, 2026. The

Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 4. Plaintiff must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

## 2. SCREENING THE COMPLAINT

### 2.1 Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right

was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff names Defendants Dr. Howard Martin ("Martin"), Nurse Stephen McCullen ("McCullen"), HSU Manager Travis Brady ("Brady"), and Warden Robert Miller ("Miller"). ECF No. 1 at 1. In October 2023, Plaintiff felt extreme pain in both of his knees while doing his physical therapy exercises. *Id.* at 3. Plaintiff contacted HSU for help because standing and walking was almost impossible. *Id.* Plaintiff felt something hard floating beneath the skin of his left knee. *Id.* at 4. On October 11, 2023, Plaintiff sent another HSU request because the pain was not improving and he was told he would be scheduled to see his provider. *Id.* Martin agreed there was something seriously wrong with Plaintiff and ordered an MRI for both knees. *Id.* The MRI results showed that Plaintiff suffered from tricompartmental osteoarthritis, a tear of the posterior horn and body of medial meniscus, and ossified loose bodies within a Baker's cyst on left knee. *Id.*

On March 20, 2024, Plaintiff sent another health request because he was having difficulty walking and was experiencing pain. *Id.* Plaintiff was encouraged to continue taking acetaminophen and Ibuprofen instead of receiving treatment. *Id.* Plaintiff was in excruciating pain and wrote to HSU again on March 22, 2204. *Id.* at 5. Plaintiff was treated as a nuisance and told to wait another month for treatment. *Id.* Plaintiff finally had surgery on

May 17, 2024. He sent a request to HSU three days later to have his bandages removed as recommended. *Id.* at 6. The institution also failed to follow the specialist's recommendation regarding Plaintiff's pain medication, and he had to wait five days after the surgery for a new prescription to address the pain. *Id.*

On May 22, 204, McCullen saw Plaintiff and forced his knee to bend, despite this causing Plaintiff excruciating pain. *Id.* Plaintiff then wrote to Martin to speak to him about the surgery and the pain he was experiencing. *Id.* McCullen responded and refused to provide any effective treatment to Plaintiff. *Id.* McCullen also failed to forward Plaintiff's request for help from his provider. *Id.* Plaintiff sent additional requests for help but was only told that he would have a follow-up appointment with the surgeon. *Id.* at 7.

On May 28, 2026, Plaintiff went for his follow-up appointment, but the surgeon never saw Plaintiff. *Id.* Instead, a nurse removed the nineteen staples from Plaintiff's knee. *Id.* Upon returning to the institution, Plaintiff noticed a lump that moved beneath the skin of his knee. *Id.* Plaintiff sent healthcare requests because this discovery worried him. *Id.* However, McCullen intercepted Plaintiff's requests for help refused to examine him. *Id.* at 8. On May 30, 2024, Plaintiff sent another request, including to Martin, notifying them of increased pain after the surgery. *Id.* Instead of addressing Plaintiff's pain, McCullen wrote back that Martin had approved a ninety-day hold. *Id.* Plaintiff then went to the unit manage for help. *Id.* The manager emailed Brady about Plaintiff's serious concerns about his health and his extreme and constant pain. *Id.* at 9. Brady responded that he would put in an order for physical therapy, that he would see Martin in a month, and to follow-up with HSU for any additional concerns. *Id.* Even the unit manager was shocked by this response. *Id.* She therefore recommended that

Plaintiff write to Miller for help. *Id.* at 10. However, instead of investigating the situation, Miller simply forwarded Plaintiff's request back to the HSU manager who had already refused to provide Plaintiff treatment. *Id.* Brady again did nothing to address Plaintiff's concerns or pain. *Id.* Plaintiff continued requesting medical treatment. *Id.*

On June 11, 2024, Plaintiff started physical therapy. *Id.* at 11. The physical therapist said he could not feel the loose body in Plaintiff's knee and refused to provide an X-ray. *Id.* At a follow-up appointment, the physical therapist could feel the piece of bone in Plaintiff's knee. *Id.* On June 19, 2024, Martin saw Plaintiff and could not feel the loose bone fragment. *Id.* Plaintiff told Martin that a nurse and the physical therapist felt the bone fragment; however, Martin refused to provide an MRI until June 27, 2024, after Plaintiff filed a complaint. *Id.* at 12. The MRI showed that Plaintiff had three loose bodies identified as well as a possible meniscus re-tear. *Id.* On July 15, 2024, Plaintiff was notified that he would need another surgery. *Id.* Martin said at this appointment that he hoped that the surgeon was not thinking of cutting of Plaintiff's leg. *Id.* This comment greatly disturbed Plaintiff. *Id.*

Plaintiff had a second surgery on October 30, 2024. *Id.* The surgeon acknowledged that the loose bodies had been left behind from the last surgery. *Id.* The surgeon was only able to remove one of the loose bodies because the tendons were hiding the others. *Id.* The surgeon indicated that Plaintiff would need a third surgery. Plaintiff's shin started to retain water and his knee was swollen and in pain. *Id.* Plaintiff wrote another health request slip for treatment. *Id.* at 13. On October 31, 2024, Plaintiff was called to HSU and told to wrap his knee and to take Ibuprofen. *Id.* Plaintiff still

had loose bodies moving in the back of his knee that were causing pain and swelling. *Id.*

**2.3 Analysis**

The Court finds that Plaintiff may proceed against Martin, McCullen Brady, and Miller on an Eighth Amendment deliberate indifference claim for their indifference to Plaintiff's serious medical needs. The Eighth Amendment secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (internal quotation omitted). Deliberate indifference claims contain both an objective and a subjective component: the inmate "must first establish that his medical condition is objectively, 'sufficiently serious,'; and second, that prison officials acted with a 'sufficiently culpable state of mind,' i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted)). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640).

At the screening stage, the Court finds that Plaintiff's allegations are sufficient to proceed against Martin, McCullen Brady, and Miller. Plaintiff alleges inadequate medical treatment for his knee injury that required multiple surgeries. Plaintiff further alleges that he notified these defendants

of his issues and received inadequate responses to his extreme pain and delayed treatment. As such, the Court finds that Plaintiff may proceed against Martin, McCullen Brady, and Miller on an Eighth Amendment deliberate indifference claim for their indifference to Plaintiff's serious medical needs.

## 3. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment claim against Martin, McCullen Brady, and Miller for deliberate indifference to Plaintiff's serious medical needs.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted

to the Wisconsin Department of Justice for service on Defendants **Martin, McCullen Brady, and Miller**;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendant files a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $304.82 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 16th day of October, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.